**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DESERT WATER AGENCY, *Plaintiff-Appellant*, v. UNITED STATES DEPARTMENT OF THE INTERIOR; KEVIN HAUGRUD, Acting U.S. Secretary of the Interior; UNITED STATES OF BUREAU OF INDIAN AFFAIRS; MICHAEL S. BLACK, Acting Assistant Secretary of Indian Affairs, *Defendants-Appellees.* | No. 14-55461  D.C. No. 5:13-cv-00606-DMG-OP  OPINION |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted August 3, 2016
Pasadena, California

Filed March 7, 2017

Before: Diarmuid F. O'Scannlain, Johnnie B. Rawlinson,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Standing

The panel affirmed the district court's dismissal for lack of standing and ripeness of a complaint brought by the Desert Water Agency ("DWA"), a political subdivision of the State of California, against the United States Department of the Interior and its Bureau of Indian Affairs, challenging a federal regulation that DWA believed might preempt certain taxes and fees DWA assessed against non-Indians who leased lands within an Indian reservation.

New federal regulation 25 C.F.R. § 162.017 concerns taxes applied to leases approved on Indian lands to third parties. DWA provides water supplies and water services to businesses and residences in Riverside County, California, and charges fees and taxes to non-Indians who lease land from the Agua Caliente Band of Cahuilla Indians within the Agua Caliente Indian Reservation.

The panel held that § 162.017 did not purport to change existing law, and therefore, did not itself operate to preempt DWA's charges, and did not command DWA to modify its behavior by doing or refraining from doing anything. The panel concluded that DWA lacked standing because it had not suffered a cognizable injury at the hands of the Department of the Interior. Finally, the panel held that it lacked jurisdiction to issue a declaratory judgment that DWA's charges would survive a preemption challenge under *White*

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

*Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980), because the dispute between DWA and the Department of the Interior was over.

## COUNSEL

Roderick E. Walston (argued) and Steven G. Martin, Best Best & Krieger LLP, Walnut Creek, California, for Plaintiff-Appellant.

Matthew Littleton (argued), John H. Turner, Jr., Elizabeth Ann Peterson, and William B. Lazarus, Attorneys; John C. Cruden, Assistant Attorney General; Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.; Bethany Sullivan and Jennifer L. Turner, Office of the Solicitor, United States Department of the Interior, Washington, D.C.; for Defendants-Appellees.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a political subdivision of the State of California has standing to challenge a federal regulation it believes might preempt certain taxes and fees it assesses against non-Indians who have leased lands within an Indian Reservation.

I

A

The Desert Water Agency ("DWA") is a political subdivision of the State of California.[1] DWA provides water supplies and water services to businesses and residences in Riverside County. DWA charges those parties a variety of fees and taxes in order to recoup its costs and expenses. Parties subject to DWA's charges include non-Indians who lease lands from the Agua Caliente Band of Cahuilla Indians (the "Tribe") within the Agua Caliente Indian Reservation. The lessees have erected a variety of permanent establishments within the reservation, including homes and businesses such as hotels, restaurants, and stores. DWA imposes its charges on the lessees themselves, and not on the Tribe or its members.

---

[1] Because this case is before us on appeal from a motion to dismiss, we recite the facts as alleged in DWA's complaint, and we assume them to be true. *See, e.g.*, *Harris v. Rand*, 682 F.3d 846, 850–51 (9th Cir. 2012).

The United States Department of the Interior ("Interior") is an executive department charged, among other duties, with managing and administering the lands of Indian reservations. The Bureau of Indian Affairs ("BIA") is an agency within Interior that oversees programs, activities, and operations relating to Indian lands and affairs.  25 U.S.C. § 2.

One of Interior's responsibilities is to approve the leasing of Indian land to third parties.  *See, e.g.*, *id.* § 415(a).  Interior has promulgated a host of regulations governing the administration of such leases, codified at 25 C.F.R. part 162. Beginning in 2011, Interior overhauled such regulations through notice and comment rulemaking; the new rules became effective January 4, 2013.  *See* Residential, Business, and Wind and Solar Resource Leases on Indian Land, 77 Fed. Reg. 72,440 (Dec. 5, 2012) (codified at 25 C.F.R. pt. 162).

Among the new regulations is 25 C.F.R. § 162.017, entitled "What taxes apply to leases approved under this part?"  The relevant subsection states that, "[s]ubject only to applicable Federal law, the leasehold or possessory interest is not subject to any fee, tax, assessment, levy, or other charge imposed by any State or political subdivision of a State. Leasehold or possessory interests may be subject to taxation by the Indian tribe with jurisdiction." 25 C.F.R. § 162.017(c). Subsection (a) applies the same language to "permanent improvements on the leased land," while subsection (b) does likewise for "activities under a lease conducted on the leased premises."  25 C.F.R. § 162.017(a)–(b).

Concerned by the possibility that Interior had just attempted to preempt its charges, DWA promptly brought suit in federal district court under the Administrative Procedure

Act, 5 U.S.C. § 702, naming Interior and the BIA as defendants.

B

Before describing the substance of DWA's complaint, it will be helpful to summarize the law that has long governed Indian preemption claims.

For many decades courts have struggled to determine whether and when States may regulate the conduct of non-Indians engaged in activities on tribal lands. In *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980), the Supreme Court held that courts must undertake a fact-specific balancing test in order to decide whether federal law preempts any particular state effort to regulate non-Indian conduct on tribal lands. *Bracker* explains that "[t]his inquiry is not dependent on mechanical or absolute conceptions of state or tribal sovereignty, but has called for a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law." *Id.* at 144–45.

C

DWA's complaint advances two different theories, each premised on a different interpretation of § 162.017. DWA's first claim is that § 162.017's reference to "applicable federal law" incorporates the *Bracker* test and other existing federal statutes, such that § 162.017 does not effect any substantive change in federal Indian preemption law. If we agree with such interpretation, DWA asks for a declaratory judgment stating that § 162.017 "does not apply to and preclude the

application of DWA's charges upon lessees of lands within the Agua Caliente Indian Reservation, because DWA's charges fall within the exception provided in the regulation for taxes and other charges authorized under 'applicable federal law.'"  In other words, DWA is asking us not only to say that *Bracker* is still the law of the land, but also to declare that, under *Bracker*, all of DWA's charges are enforceable and definitively not preempted.

DWA's alternative claim is that if § 162.017 does *not* incorporate *Bracker* and related statutory law—in other words, if § 162.017 purports to displace existing law and to preempt DWA's charges immediately, of its own force—then § 162.017 must be declared invalid on the theory that Interior had no authority to issue legislative rules preempting DWA's charges.

Despite its apprehensions about § 162.017, DWA's complaint does not allege that it has changed its behavior in any way (for example, by ceasing to assess charges).  Nor does its complaint allege that Interior or the BIA has threatened to take any enforcement action against DWA in response to its decision to continue assessing charges.  And the complaint does not allege that any leaseholders have withheld payment or objected to paying DWA's charges.[2]

---

[2] About nine months after DWA brought this action against Interior, the Tribe filed suit against Riverside County, invoking § 162.017 and seeking declaratory and injunctive relief barring the County from assessing a possessory interest tax on lessees of Reservation lands.  We GRANT DWA's request that we take judicial notice of the Tribe's complaint.  The district court in that action held that § 162.017 did not replace *Bracker* or otherwise preempt the County's tax on its own, and the Tribe subsequently dismissed its suit voluntarily.  In addition, after DWA filed its complaint, the County received a handful of letters from lessees

The district court dismissed DWA's complaint for lack of standing.  The district court emphasized that DWA's complaint never alleged that any leaseholder had refused to pay charges; never alleged that Interior or the BIA had threatened or planned any enforcement proceeding against it; and never alleged that DWA had done anything to change its behavior in response to § 162.017.  Hence, the district court concluded that there is no evidence that DWA had suffered (or immediately would suffer) injury of any sort due to the regulation.

The district court also held that DWA's suit is not prudentially ripe.  The district court reasoned that even if the regulation purports to change existing law by operating to preempt State taxes on applicable leases, it is not yet clear whether any of DWA's charges would be affected, because the regulation also has a "grandfather clause" stating that it does not apply to certain leases approved before January 4, 2013.  The district court also reasoned that DWA has not shown any hardship, again for the reason that DWA has not alleged that it has changed its behavior or that any lessees have refused to pay.

DWA timely appealed.

---

and members of the Tribe asserting that county taxes (including DWA's charges) are prohibited under § 162.017.  DWA also received one claim for a reimbursement, which it denied.

II

A

We review the district court's standing and ripeness determinations de novo. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1087 (9th Cir. 2010). The parties on appeal have largely collapsed their discussion of the two concepts into a discussion of standing. We will do the same.

B

The "irreducible constitutional minimum of standing" consists of three elements: the plaintiff must have (1) suffered an injury in fact; (2) that was caused by the defendant's challenged conduct; and (3) that would be redressed by the remedy the plaintiff seeks. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

In order to determine whether DWA has standing to challenge § 162.017, we must first decide what exactly § 162.017 purports to do—that is, in what way, if any, it purports to change the authority States like California currently enjoy to tax non-Indian lessees on tribal lands. The parties disagree sharply about how best to understand § 162.017. But only by first determining what that regulation means can we determine how (if at all) it injures DWA, and to what extent (if any) such injury would be redressed by the declaratory judgment DWA seeks.[3]

---

[3] Consistent with the above principles, the law of standing draws a crucial distinction between plaintiffs who are the "object" of challenged agency action, and those who are not. *Defs. of Wildlife*, 504 U.S. 561–62.

On appeal, DWA argues that it has standing to bring this lawsuit because, it claims, § 162.017 purports to preempt its laws directly and immediately. That is, DWA believes that the agency meant § 162.017 to displace the *Bracker* balancing test and to command DWA to change its behavior immediately by ceasing to charge leaseholders on tribal lands. DWA's briefing is devoted overwhelmingly—almost exclusively—to the proposition that a State has standing to challenge a federal statute or regulation that preempts its laws.

Interior's view is the polar opposite. According to Interior, DWA fundamentally misunderstands § 162.017. Interior says that, so far as preemption is concerned, § 162.017 has no legal effect at all: it does not purport to preempt any specific state taxes—including DWA's—or to alter the judge-made and judge-administered balancing test that has governed Indian preemption cases since at least 1980, when the Supreme Court decided *Bracker*. The only thing § 162.017 does, according to Interior, is to state publicly the agency's interpretation of existing law (namely, *Bracker*), and to clarify its opinion that under *Bracker*, the federal and tribal interests at stake are strong enough to have a preemptive effect in the generality of cases. But on the ultimate question of whether any *specific* state tax or charge is preempted under *Bracker*, Interior is agnostic; courts must answer such questions in the same way they always have, by

---

But naturally, in order to say whether a plaintiff is the "object" of a given regulation—whether it purports to regulate the plaintiff's primary conduct—a court must first determine how, if at all, such regulation alters his rights, obligations, privileges, powers, or liabilities. Given the parties' deep disagreement over the nature of § 162.017, it should come as no surprise that they also disagree about whether DWA is an "object" of the regulation.

applying the *Bracker* test de novo.  Interior's views as set out in § 162.017 may well influence courts when they gauge the federal and tribal interests under *Bracker*, but Interior does not contend that § 162.017 has any independent legal effect. Interior has consistently advanced this interpretation of the regulation in its briefs in this case, in an amicus brief filed in an unrelated lawsuit brought by the Tribe against Riverside County, and at oral argument here.

C

We read § 162.017 as Interior does.  The regulation does not purport to change existing law, and therefore it does not operate to preempt DWA's charges.  We adopt this reading for several reasons.

1

First, it is consistent with the text of § 162.017.  As Interior emphasizes, § 162.017 begins with a caveat: "*[s]ubject only to applicable Federal law*, the leasehold or possessory interest is not subject to any fee, tax, assessment, levy, or other charge imposed by any State or political subdivision of a State."  25 C.F.R. § 162.017(c) (emphasis added).  Interior construes the italicized language as a sort of savings clause, asserting that "the *Bracker* test is subsumed within the phrase 'applicable Federal law.'"  Indeed, Interior claims that it "could have rephrased § 162.017 'to state simply that taxes may be assessed if permitted by applicable law on land, improvements, and activities,'" as one commenter had proposed doing with respect to a related regulation.  *See* Rights-of-Way on Indian Land, 80 Fed. Reg. 72,492-01, 72,507 (Nov. 19, 2015) (codified at 25 C.F.R. pt. 169).  Consistent with that understanding, the preamble to

§ 162.017's Notice of Proposed Rulemaking says that the regulation simply "*[c]larif[ies]*" the agency's view "that improvements on trust or restricted land are not taxable by States or localities." Residential, Business, and Wind and Solar Resource Leases on Indian Land, 76 Fed. Reg. 73,784-01, 73,785 (Nov. 29, 2011) (to be codified at 25 C.F.R. pt. 162) (emphasis added). Clarifying the agency's understanding of how existing law applies in general is very different from attempting to change existing law.

To be sure, there is other language—mostly in the preamble to the final rule—that arguably supports DWA's interpretation. In particular, the preamble states that "[t]he Federal statutes and regulations governing leasing on Indian lands . . . occupy and preempt the field of Indian leasing. The Federal statutory scheme for Indian leasing is comprehensive, and accordingly precludes State taxation." 77 Fed. Reg. at 72,447. But that statement comes immediately after the preamble which implies that the judge-administered *Bracker* regime remains controlling law. *Id.* ("Federal courts apply a balancing test to determine whether State taxation of non-Indians engaging in activity or owning property on the reservation is preempted. *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143 (1980). The *Bracker* balancing test requires a particularized examination of the relevant State, Federal, and tribal interests. In the case of leasing on Indian lands, the Federal and tribal interests are very strong.").

Even if a purely textual analysis might present a close call, we ultimately conclude that the language tips in favor of Interior's view. As noted, the language of the regulation itself—as distinct from the preamble—is perfectly consistent with the agency's view that § 162.017 leaves *Bracker* in place

while merely setting forth the agency's interpretation of how *Bracker* should apply over the generality of cases, without operating to preempt any specific state law. Indeed, recall that DWA's own complaint asserted that § 162.017 does *not* change the current legal regime, precisely because *Bracker* "is an 'applicable federal law' within the meaning of the federal regulation." That, of course, is exactly Interior's position. And while DWA is not bound by an argument it made in the alternative, the fact that DWA made it at all attests to its plausibility.

To the extent that the language in the regulation is ambiguous, we defer to Interior's interpretation. *Auer v. Robbins*, 519 U.S. 452, 461–62 (1997). Here, as in *Auer*, we have "no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question," *id.*, and the regulation more than "comfortably bears" Interior's reading, *id.* at 461.[4]

---

[4] At oral argument, Interior expressly disclaimed the possibility that § 162.017's language concerning preemption could constitute a "legislative rule." We agree; indeed, it is not clear that Interior *has* the authority to preempt state laws, and it has never claimed such power. Moreover, its consistently held interpretation of § 162.017 demonstrates that it "never meant for the disputed [language] to have [preemptive] effect." *Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*, 738 F.3d 387, 390 (D.C. Cir. 2013). Because the preemption-related language in § 162.017 does not "create 'adverse effects of a strictly legal kind'" and does not "'command anyone to do anything or to refrain from doing anything,'" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 809 (2003) (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)), such language appears to be nothing more than an "interpretative rule, statement, guideline, or policy statement [that] merely informs the public of the agency's views on the subject," *Am. Tort Reform Ass'n*, 738 F.3d at 393.

2

Furthermore, the reading of the regulation we adopt today is consistent with the interpretation made by the Eleventh Circuit, as well as with comments we have previously made about the regulation, albeit in dicta.

First, the Eleventh Circuit recently decided a lawsuit brought by the Seminole Tribe of Florida against Florida's Department of Revenue. *Seminole Tribe of Fla. v. Stranburg*, 799 F.3d 1324 (11th Cir. 2015). The Tribe alleged that two Florida taxes were preempted by federal law, *id.* at 1326, and they relied on § 162.017 to support their case, *id.* at 1337–38. The Eleventh Circuit agreed with the Tribe in part, *id.* at 1326, but importantly for our purposes, the court effectively construed § 162.017 as Interior construes it here: the court conducted "a *de novo Bracker* analysis," "declin[ing] to accord the regulations deference" on the question whether the specific Florida taxes were preempted, *id.* at 1335. Like Interior does here, the Eleventh Circuit read § 162.017 to do no more than "outline[] the *Bracker* balancing test and . . . appl[y] it generally," rather than to express a view on its application to any specific tax or charge. *Id.* at 1337. Hence, while the court acknowledged that the regulation might "serve as evidence of the federal and tribal interests involved," the court concluded that § 162.017 "did not examine *Florida's* interests in imposing this particular Rental Tax," and so it could do no more than "inform the *Bracker* balancing inquiry" which courts must undertake themselves. *Id.* at 1338–39. The court therefore conducted a *Bracker* inquiry just as it would have done had § 162.017 never been promulgated.

The Eleventh Circuit's analysis aligns with Interior's representation that it "took no position in this case regarding the validity of any particular charge imposed by DWA," precisely "[b]ecause the issue had not been presented to Interior during the administrative process."

Similarly, we recently declared that § 162.017 "'merely clarifies and confirms' what [existing law] 'already conveys.'" *Confederated Tribes of Chehalis Reservation v. Thurston Cty. Bd. of Equalization*, 724 F.3d 1153, 1157 n.6 (9th Cir. 2013) (quoting *Watters v. Wachovia Bank, N.A.*, 500 U.S. 1, 20–21 (2007)).

Thus, both the Eleventh Circuit (in a thorough analysis) and a panel of our court (in dicta) have construed § 162.017 in a way that is incompatible with DWA's assertion that the regulation must be read to preempt its charges directly and immediately. Rather, those cases echo the position we reach today: that § 162.017 does not displace or modify *Bracker*—or otherwise change existing law—and therefore it does not of its own force operate to preempt any specific state tax.[5]

III

Once we conclude that § 162.017 does not preempt DWA's charges, or otherwise require or forbid DWA to change its behavior in any way, it follows that DWA lacks standing to challenge the regulation. As we noted above,

---

[5] To be clear, neither we nor Interior takes the position that DWA's specific charges *are not* preempted under *Bracker*. Such charges might well be preempted, but courts will have to make that call, just as they would have done if § 162.017 had never been passed.

DWA's arguments are devoted almost entirely to the proposition that a State has standing to challenge a federal statute or regulation that preempts its laws.  Obviously, such argument loses much of its force if § 162.017 does not preempt DWA's charges at all.

As far as we can tell, DWA makes a single argument as to why it would have standing to challenge § 162.017 even if it has no preemptive effect.  The argument seems to be that § 162.017 injures DWA because it encourages leaseholders to object to paying DWA's charges.  And, the theory appears to be, an order declaring the regulation invalid would redress such injury because then the leaseholders would pay DWA's charges without objection.   We think this theory is inadequate.

DWA's theory cannot be squared with the injury-in-fact and redressability requirements in our standing jurisprudence. With respect to injury-in-fact, mere "encouragement" of an objection absent an imminent, concrete loss is insufficient to establish standing.  With respect to redressability, DWA is asking us to invalidate § 162.017 in the hope that such relief will cause a group of third parties who are not before the court (i.e., non-Tribal leaseholders) to modify their behavior in a way that DWA thinks will redound to its benefit.  But the problem is that the Supreme Court has consistently said that a  plaintiff  in  DWA's  position  lacks  standing  if, notwithstanding the relief sought, the third parties would retain discretion to continue their harmful behavior or, alternatively, if it is too speculative to conclude that they would modify their behavior in the way the plaintiff desires. Either reading of the redressability doctrine precludes DWA's standing under the circumstances presented here.

For example, in *Linda R.S. v. Richard D.*, 410 U.S. 614, 615–16 (1973), a single mother brought a lawsuit asking the court to order the local district attorney to initiate child support enforcement proceedings against the father of her child. The Supreme Court held that she lacked standing because even if she "were granted the requested relief, it would result only in the jailing of the child's father. The prospect that prosecution will, at least in the future, result in payment of support can, at best, be termed only speculative." *Id.* at 618. That is, even if the court were to order the local prosecutor to go after the father of the plaintiff's child, such order would not have created a legal obligation on the part of the father to pay child support (and whether he would in fact pay support was anybody's guess). The same is true here. Invalidating § 162.017 would have no effect on leaseholders' legal entitlement to bring a preemption suit against DWA; and as was true of the father in *Linda R.S.*, it is impossible to conclude that the non-Indian leaseholders will change their behavior in the way DWA anticipates even if it were to prevail in this lawsuit.

Similarly, in *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 28–32 (1976), a group of indigent plaintiffs challenged an IRS ruling that allowed nonprofit hospitals to reduce the availability of free services and still retain their charitable organization status. The plaintiffs alleged that the IRS ruling made such hospitals less likely to grant free services to indigents like themselves, *id.* at 33, but the Court held that they lacked standing because their alleged injury "result[ed] from the independent action of some third party not before the court," *id.* at 42—i.e., the hospitals who denied them service, rather than the IRS, who was the named defendant. The Court said it was too speculative to conclude that the denials of service were caused by the IRS ruling, or

that the indigents would be granted free hospital access if the IRS invalidated its ruling. *Id.* at 42–44. Likewise, because § 162.017 does not operate to preempt DWA's charges, whatever injury DWA suffers results from the independent actions of third party lessees who are not before the court. And DWA's complaint does no more than speculate that § 162.017 makes such lessees more likely to object to paying their charges.[6]

In short, if § 162.017 does not itself preempt DWA's charges, then § 162.017 cannot be said to have injured DWA in a way that is both non-speculative and redressable by the remedy DWA seeks. That means DWA lacks standing, as the District Court properly held.

IV

Finally, we certainly lack jurisdiction to issue a declaratory judgment that DWA's charges would survive a preemption challenge under *Bracker*. DWA is asking us to decide whether leaseholders would have a valid defense (preemption) in the event they refuse to pay and DWA brings an enforcement action to collect, or a valid claim for injunctive relief against DWA on the basis of federal preemption. The proper vehicle to resolve that question is a suit between DWA and one of the leaseholders, if one of

---

[6] Whatever evidence DWA now alludes to (for example, the lone reimbursement claim it received) postdates the filing of its complaint, and is therefore irrelevant for purposes of standing. *Defs. of Wildlife*, 504 U.S. at 569 n.4 (noting "our longstanding rule that jurisdiction is to be assessed under the facts existing when the complaint is filed," and that "a plaintiff cannot retroactively create jurisdiction based on postcomplaint litigation conduct").

them either sues DWA or refuses to pay DWA's charges.[7] But the leaseholders are not parties to this case, which is between DWA and Interior. "The declaratory judgment procedure . . . may not be made the medium for securing an advisory opinion in a controversy which has not arisen." *Coffman v. Breeze Corp.*, 323 U.S. 316, 324 (1945). The question DWA wants us to answer—are the leaseholders obligated to continue paying its charges?—is simply not within the scope of the case or controversy between DWA and Interior, which asks only whether Interior has changed the law in such a way as automatically to render DWA's charges preempted. Because we decide that Interior has not done so, the dispute between DWA and Interior is over.

V

We agree with Interior that § 162.017 does not itself operate to preempt DWA's charges, and does not command DWA to modify its behavior by doing or refraining from doing anything. Accordingly, we conclude that DWA lacks standing because it has not suffered a cognizable injury at the hands of Interior. The judgment of the district court is therefore

**AFFIRMED.**

---

[7] We note that DWA likely could not sue a leaseholder in federal court, seeking a declaratory judgment that its charges are not preempted. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21–22 (1983) ("[F]ederal courts should not entertain suits by the States to declare the validity of their regulations despite possibly conflicting federal law. . . . [A] State's suit for a declaration of the validity of state law . . . is not within the original jurisdiction of the United States district courts.").