

FILED

APR 19 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. AZ-18-1131-BTaL |
| JOAN KATHRYN LIVDAHL, | Bk. No. 2:16-bk-12768-MCW |
| Debtor. | Adv. No. 2:18-ap-00054-MCW |
| LEONARD NOEL ROBERTS, | |
| Appellant, | |
| v. | **MEMORANDUM**<sup>*</sup> |
| JOAN KATHRYN LIVDAHL, | |
| Appellee. | |

Argued and Submitted on March 22, 2019
at Phoenix, Arizona

Filed – April 19, 2019

Appeal from the United States Bankruptcy Court
for the District of Arizona

---

<sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appearances:    Craig Stephan argued for Appellant Leonard Noel
                Roberts; Katherine Anderson Sanchez of Dickinson
                Wright PLLC argued for Appellee Joan Kathryn Livdahl.

Before:    BRAND, TAYLOR and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Appellant Leonard Roberts appeals an order dismissing his dischargeability complaint for untimeliness, lack of standing, and claim preclusion. We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Prepetition events

The following facts are undisputed. In 2003, Livdahl obtained the subject real property located in Scottsdale, Arizona (the "Property"). Livdahl and Roberts met in 2004, and the two began dating.

In 2005, Livdahl executed a Home Equity Variable Rate Line of Credit Agreement and Disclosure Statement with Desert Schools Federal Credit Union ("Credit Union") and a Revolving Credit Deed of Trust ("DOT"). The line of credit was for $125,000. The DOT gave Credit Union a valid and perfected lien on the Property and was the only consensual lien on the Property during all relevant times.

In June 2011, Livdahl established JTC'S, LLC, an Arizona limited liability company which is wholly owned by the Livdahl Family Trust. Livdahl manages JTC'S, LLC and is the trustee of the Livdahl Family Trust.

In August 2011, Livdahl transferred the Property to JTC'S, LLC. She did a similar transfer of another property located in Tucson, Arizona.

Roberts sued Livdahl and JTC'S, LLC over the Tucson property. On October 28, 2015, the Pima County Superior Court entered judgment in favor of Roberts and against Livdahl and JTC's, LLC for $795,290.53 plus interest (the "Judgment"). That same day, Livdahl withdrew $125,000 against the line of credit secured by the DOT. She allegedly transferred the funds to her son in the Philippines.

On November 3, 2015, Roberts filed the Judgment with the Maricopa County Superior Court and recorded it in Maricopa County so that he could execute on any real property located there, including the Property. A writ of general execution was issued, and a sheriff's sale of the Property was scheduled for February 4, 2016.

Thereafter, a series of bankruptcy filings ensued. The first chapter 11[1] case for JTC'S, LLC was filed on February 4, 2016, just moments before the scheduled sheriff's sale. That case was dismissed on April 4, 2016. The next

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

day, JTC'S, LLC executed and recorded a quitclaim deed transferring the Property back to Livdahl.

The sheriff's sale eventually proceeded on July 21, 2016. Roberts purchased the Property with a credit bid of $200,000 against his Judgment. When Livdahl refused to vacate, Roberts sought and was granted a forcible detainer judgment against her. However, before any final judgment was entered, Livdahl filed for bankruptcy.

## B.    Postpetition events

### 1.    Livdahl's bankruptcy filing

Livdahl filed a chapter 11 bankruptcy case on November 7, 2016. She claimed a fee simple ownership interest in the Property in her Schedule A/B, valuing it at $200,000; she claimed a $150,000 homestead exemption for the Property in her Schedule C. Livdahl disclosed Credit Union's $125,000 lien against the Property in her Schedule D, and in her amended Schedules D and F, she listed Roberts as both a secured and unsecured creditor with a claim of $800,000. The last day for filing dischargeability complaints against Livdahl was February 13, 2017.[2]

On the petition date, Roberts filed an emergency motion for relief from the automatic stay identifying himself as "the present owner of the

---

[2] JTC'S, LLC filed a second chapter 11 bankruptcy case on January 20, 2017. The case was dismissed on February 6, 2017, reinstated on February 21, 2017, and dismissed again on March 22, 2017.

4

[Property]" and stating that Livdahl was a "trespasser in unlawful possession of the Property without any lease or tenancy agreement." Roberts sought both possession of the Property and past rents owed from Livdahl.

Credit Union filed a $119,107.27 secured proof of claim in Livdahl's case. Credit Union valued the Property at $260,216.00.

Meanwhile, on February 7, 2017, after the redemption period expired without any party redeeming the Property after the July 21, 2016 sheriff's sale, the Maricopa County Sheriff executed a sheriff's deed conveying the Property to Roberts. The sheriff's deed was recorded on July 10, 2017.

## 2. The first adversary proceeding

On February 13, 2017, Roberts filed his first dischargeability complaint against Livdahl, seeking to except the Judgment from discharge under § 523(a)(2). Livdahl filed an answer and counterclaim. Ultimately, the parties stipulated that the Judgment of $795,290.53 would be excepted from discharge under § 523(a)(2).

However, Livdahl's counterclaim remained in dispute. In short, she argued that the sheriff's sale was invalid; at the time of the sale she held a valid Arizona homestead exemption in the Property, and because of the homestead exemption, the Judgment lien was released. Therefore, since Roberts had no lien against the Property prior to the sale, the sale was invalid. To support her argument, Livdahl asserted that title to the

5

Property did not transfer to Roberts until February 7, 2017, when the sheriff's deed was issued.

In his motion to dismiss Livdahl's counterclaim, Roberts argued that the recorded Judgment became a lien on the Property, which was owned by JTC'S, LLC and was not subject to a homestead exemption. Because Livdahl had actual notice of the Judgment lien when she transferred the Property back to herself in April 2016, argued Roberts, she took it subject to the lien; the subsequent transfer to herself and alleged homestead exemption did not extinguish the Judgment lien or impair the sheriff's ability to sell it.

On January 10, 2018, the bankruptcy court entered its Memorandum Decision and Order on Livdahl's counterclaim, finding that the sheriff's sale was valid, and that Livdahl could not defeat the Judgment lien by transferring the Property back to herself after the lien had properly attached in November 2015.

**3. The second adversary proceeding**

**a. The complaint and motion to dismiss**

Roberts filed his second adversary complaint against Livdahl on February 14, 2018, alleging two claims for fraudulent transfer and one claim for fraudulent concealment ("Second Complaint"). Roberts alleged that Livdahl's withdrawal of the $125,000 from the line of credit on October 28, 2015, decreased the equity in the Property and was done with

the actual intent to hinder, delay or defraud him. Roberts alleged that Livdahl borrowed the $125,000 from Credit Union without receiving a reasonably equivalent value in exchange for the obligation. Roberts alleged that he was also injured when Livdahl transferred the $125,000 of equity in the Property to her son in the Philippines with the actual intent to hinder, delay or defraud him, without receiving reasonably equivalent value in exchange from her son. Finally, Roberts alleged that Livdahl borrowed the $125,000 under false pretenses, a false representation or actual fraud and, as a result, wrongfully encumbered the Property harming Roberts. In his prayer for relief, Roberts sought a declaration from the court that any amount owed to Credit Union was excepted from discharge under § 523(a)(2).

Livdahl moved to dismiss the Second Complaint under Civil Rule 12(b)(1) for lack of subject matter jurisdiction and Civil Rule 12(b)(6) for failure to state a claim ("Motion to Dismiss"). Livdahl argued that Roberts lacked standing to seek an order that a debt owed to Credit Union was nondischargeable. Further, Roberts suffered no injury from the DOT. He had no legal interest in the Property when the debt was incurred to Credit Union on October 28, 2015, and he purchased the Property at the sheriff's sale with notice of the DOT. Livdahl argued that any fraudulent transfer claims belonged to the estate and Roberts lacked standing to bring them.

Livdahl also argued that the Second Complaint was untimely. The

bar date for a dischargeability complaint under § 523(a)(2) expired a year before on February 13, 2017, and Roberts had failed to seek an extension of time for filing the Second Complaint before the 60-day deadline expired under Rule 4007(c). Livdahl argued that even if Roberts had a protectable interest in the nondischargeability of another's debt, which she disputed, he received notice of the case and related deadlines, and he was actively involved in the case since day one, starting with his motion for relief from stay. Any potential claim for nondischargeability by Credit Union was also time barred; Credit Union was listed in the schedules and had notice of the bankruptcy. Finally, Livdahl argued that the Second Complaint should be dismissed because Roberts was alleging prepetition claims against her without first seeking relief from the automatic stay.

In opposition, Roberts argued that he had standing to file the Second Complaint: (1) he was injured by Livdahl's withdrawal of the $125,000 because her failure to repay the loan could cause Credit Union to conduct a trustee's sale of the Property; (2) but for the withdrawal, he would have been able to purchase the Property free and clear of liens, thereby satisfying more of the Judgment; and (3) his injury would be redressed if the court determined that the debt owed to Credit Union was nondischargeable; Credit Union would retain the ability to pursue Livdahl personally for the debt, which would motivate her to repay it and allow Roberts to recover the equity she took.

8

Roberts also argued that the Second Complaint was timely because his claim did not exist as of the bar date. Roberts argued that Livdahl held title to the Property when she filed her bankruptcy case in November 2016. Her counterclaim in the first adversary proceeding asked the court to declare the sheriff's sale invalid and to vest title to the Property in her free and clear of the Judgment lien. Roberts argued that it was not until January 10, 2018, when the bankruptcy court confirmed his ownership interest in the Property, that his claim arose. Roberts argued that if he had brought a dischargeability complaint for the Credit Union debt anytime prior to the court's ownership determination, it would have been dismissed for lack of standing or ripeness. Roberts argued that because his claim was not ripe until January 10, 2018, he should be given 30-60 days thereafter to file a dischargeability complaint; any other reading of the bar date unfairly punished him.

### b.     The bankruptcy court's ruling on the Motion to Dismiss

At the hearing on the Motion to Dismiss, counsel for Roberts confirmed that he was seeking only a declaration that the Credit Union debt was nondischargeable. Counsel argued that the court could allow an untimely filing despite the strict deadline in Rule 4007(c) for equitable reasons, and that the real issue was whether the claim existed at the time of the bar date; if not, then proper notice of the bar date was irrelevant.

The bankruptcy court orally granted the Motion to Dismiss with

prejudice. It first determined that the Second Complaint was untimely, and that it lacked any equitable power to extend the deadline. Roberts had ample notice and opportunity to file a timely complaint. His theory that he could not file a claim because it was not ripe lacked merit. The court also found that Roberts lacked standing. Any claim for nondischargeability of the $125,000 debt belonged to Credit Union, and Credit Union should have brought the claim.

Accordingly, because the Second Complaint was untimely and Roberts lacked standing, the bankruptcy court ruled that it lacked subject matter jurisdiction to hear the matter. In addition, the court found that claim preclusion applied and that Roberts should have brought the claim in the first adversary complaint. Roberts timely appealed the court's later written order.[3]

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

---

[3] On May 2, 2018, the bankruptcy court entered a minute order granting the Motion to Dismiss and dismissing the adversary proceeding with prejudice, which Roberts timely appealed. Because no separate judgment had been entered by the bankruptcy court when the appeal was filed, we gave the parties an opportunity to request one, which they did. Unfortunately, another "order" was entered on July 24, 2018, which did not cure the problem. In any case, the original dismissal order became final on October 1, 2018, despite the lack of a separate judgment, thereby giving us jurisdiction. *See* Civil Rule 58(c)(2)(B); Rule 7058.

## III. ISSUE

Did the bankruptcy court err in dismissing the Second Complaint?

## IV. STANDARDS OF REVIEW

We review de novo questions of subject matter jurisdiction. *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1193 (9th Cir. 2005); *Davis v. Courington (In re Davis)*, 177 B.R. 907, 910 (9th Cir. BAP 1995) (dismissal of complaint for lack of subject matter jurisdiction).

Issues of standing and ripeness are reviewed de novo. *Desert Water Agency v. U.S. Dep't of the Interior*, 849 F.3d 1250, 1253 (9th Cir. 2017). We review issues of statutory construction and conclusions of law, including interpretation of the Bankruptcy Code and Rules, de novo. *Wells Fargo Bank N.W, N.A. v. Yett (In re Yett)*, 306 B.R. 287, 290 (9th Cir. BAP 2004).

We review the bankruptcy court's decision to dismiss a complaint with prejudice for abuse of discretion. *Anwar v. Johnson*, 720 F.3d 1183, 1186 (9th Cir. 2013).

## V. DISCUSSION

**A.    The bankruptcy court did not err in dismissing the Second Complaint.**

### 1.    Civil Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Civil Rule 12(b)(1), applicable here by Rule 7012, may either:  (1) attack the allegations of the complaint as insufficient to confer upon the court subject

matter jurisdiction, or (2) attack the existence of the subject matter jurisdiction in fact. *Thorhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). In a facial attack, the challenger asserts that the allegations in the complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the moving party disputes the truth of the allegations that, by themselves, would invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F. 3d 1035, 1039 (9th Cir. 2004).

When a party has yet to answer the complaint or engage in discovery, the motion to dismiss is a facial attack on the court's subject matter jurisdiction. *See Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc.*, 684 F.3d 413, 417 (3d Cir. 2012). When, as here, a defendant files a facial challenge to jurisdiction, all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

### 2. Section 523(c) and Rule 4007(c)

To challenge the dischargeability of a debt resulting from fraud or misrepresentation under § 523(a)(2)(A),[4] the creditor to whom such debt is

---

[4] It was not clear in the Second Complaint, nor was it stated in the court's order, whether Roberts was asserting a claim under § 523(a)(2)(A) or (B). However, the parties appear to agree that he was asserting a claim under § 523(a)(2)(A).

owed must request exception of that debt from discharge. § 523(c)(1). Rule 4007 imposes a strict 60-day time limit for filing complaints to determine dischargeability of debts listed in § 523(c)(1). That rule provides, in pertinent part:

> [A] complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

Rule 4007(c).[5] *See also* Rule 9006(b)(3) (the deadline for filing a nondischargeability complaint may be extended "only to the extent and under the conditions stated" in the applicable rule). "Thus, when a creditor seeks to extend the 60-day window to file a nondischargeability complaint, the creditor must file a motion before the deadline passes and show cause why the extension is necessary." *Willms v. Sanderson*, 723 F.3d 1094, 1100 (9th Cir. 2013).[6]

---

[5] The deadline under Rule 4007(c) is not jurisdictional and must be asserted as a defense, or the defense of untimeliness may be forfeited. *See Kontrick v. Ryan*, 540 U.S. 443, 458-60 (2004). Livdahl asserted untimeliness in the Motion to Dismiss.

[6] There is an exception to this time restriction for creditors who do not have notice or actual knowledge of the bankruptcy in time to file a timely nondischargeability complaint. *See* Rule 4007(b). Such creditors may file a complaint

(continued...)

### 3. Analysis

Roberts does not dispute receiving notice of Livdahl's bankruptcy case and of the Rule 4007(c) bar date for filing a dischargeability complaint for debts listed in § 523(c)(1). It is also undisputed that Roberts never moved for an extension of time to file the Second Complaint before the 60-day time period had expired. Nonetheless, Roberts argues that "extraordinary circumstances" exist to allow his untimely complaint. Roberts contends he did not have a justiciable claim against Livdahl for nondischargeability of the Credit Union debt until January 10, 2018 — the day the bankruptcy court conclusively determined that he owned the Property. Thus, his claim was not ripe until nearly a year after the bar date had expired. Under those circumstances, argues Roberts, notice of the bar date is irrelevant, and the bankruptcy court should have used its equitable powers under § 105(a) to allow the late filing.

The Ninth Circuit Court of Appeals has "repeatedly held that the sixty-day time limit for filing nondischargeability complaints under 11 U.S.C. § 523(c) is strict and, without qualification, cannot be extended unless a motion is made before the 60-day limit expires." *Anwar*, 720 F.3d at 1187 (internal quotation marks omitted); *Allred v. Kennerley (In re*

---

[6](...continued)
under § 523(a)(3)(B) at any time because their debts are not discharged. *Staffer v. Predovich (In re Staffer)*, 306 F.3d 967, 971-72 (9th Cir. 2002) (citing Rule 4007(b)).

14

*Kennerley)*, 995 F.2d 145, 146 (9th Cir. 1993) (citing *Anwiler v. Patchett (In re Anwiler)*, 958 F.2d 925 (9th Cir. 1992)) (other citations omitted). Strict construction of Rule 4007(c) is necessary due to "the need for certainty in determining which claims are and are not discharged." *In re Kennerley*, 995 F.2d at 148. The bankruptcy court lacks equitable power under § 105(a) to grant a retroactive extension of the filing deadline, because it conflicts with the plain language of Rules 4007(c) and 9006(b)(3). *Anwar*, 720 F.3d at 1187-88.

In the past, the Ninth Circuit has recognized an exception to the 60-day time limit for "unique" or "extraordinary" circumstances. *In re Kennerley*, 995 F.2d at 147; *see also Willms*, 723 F.3d at 1103. The "extraordinary circumstances" exception applies to situations where the bankruptcy court "explicitly misleads a party" into untimely filing its complaint. *In re Kennerley*, 995 F.2d at 147-48; *see also Willms*, 723 F.3d at 1103; *Merenda v. Brown (In re Brown)*, 102 B.R. 187, 189 (9th Cir. BAP 1989) (limiting exception to circumstances where court miscalculates the Rule 4007(c) deadline and sends erroneous notice). Under such extraordinary circumstances, the bankruptcy court may use its equitable powers under § 105(a) to allow an untimely complaint to proceed. *See Anwiler*, 958 F.2d at 929. In *Anwiler*, the Ninth Circuit Court of Appeals allowed creditors to file an untimely § 523 complaint because the bankruptcy court had sent them a notice containing the incorrect filing deadline. *Anwar* did not expressly

15

overrule this exception. 720 F.3d at 1188 n.6.

However, "[a]bsent action by the court that could have misled the creditor, there is no authority for finding 'extraordinary circumstances' that would allow for an untimely complaint to go forward." *Classic Auto Refinishing, Inc. v. Marino (In re Marino)*, 143 B.R. 728, 733 (9th Cir. BAP 1992), *aff'd*, 37 F.3d 1354 (9th Cir. 1994). Nothing in the record shows, and Roberts does not argue, that the bankruptcy court acted in a way that misled him into filing his Second Complaint one year after the deadline. And he has not demonstrated the fact that his claim was not ripe until then is an "extraordinary circumstance" warranting an exception to the rule. He has not cited, and we could not locate, any authority to support his argument.

The only case he cites is *Manufacturers Hanover v. Dewalt (In re Dewalt)*, 961 F.2d 848 (9th Cir. 1992). In *Dewalt*, the creditor did not receive notice of the debtor's bankruptcy, or of the Rule 4007(c) bar date for filing a complaint to determine nondischargeability. Seven days prior to the deadline, the creditor learned of the bankruptcy. The creditor filed a complaint to determine nondischargeability several months later. The debtor moved to dismiss the complaint as untimely. The bankruptcy court granted the motion to dismiss, and a divided BAP panel affirmed the bankruptcy court, holding that seven days was enough time to permit the creditor at least to file an extension motion seeking more time to file its

complaint. *Id.* at 849-50. The Ninth Circuit Court of Appeals reversed, holding that, in most cases, the creditor must have actual knowledge of the bankruptcy case at least thirty days before the Rule 4007(c) bar date in order to satisfy § 523(a)(3)(B)'s actual knowledge clause. *Id.* at 850-51. In so holding, the court noted:

> The BAP majority read [*Lompa v. Price (In re Price)*, 871 F.2d 97 (9th Cir. 1989)] as holding that if a creditor, acting under ideal circumstances and with the utmost of diligence, could have filed for an extension of time before the bar date, the creditor's late complaint would be barred. This interpretation unfairly punishes creditors, holding them to the highest standards of diligence in a situation caused by negligence of a debtor, and rewarding the debtor, in effect, for negligent filing.

*Id.* at 850.

Roberts acknowledges that *Dewalt* is distinguishable in that he had notice of the bar date. However, he compares his circumstance of not having a justiciable claim until after the bar date to that of the circumstance where a deadline to file a dischargeability complaint was extended because the creditor learned of the bankruptcy case only shortly before the deadline expired. We are not persuaded.

Even if Roberts perceived that his claim was not yet ripe by the February 13, 2017 deadline, he could have moved for an extension of time to file the Second Complaint before the deadline to preserve his alleged claim, and requested that it be held in abeyance until the homestead

17

exemption/ownership issues were resolved. This situation is not akin to *Dewalt*, because Roberts had notice that a possible dischargeability claim for Credit Union debt arose long before the February 13, 2017 deadline. He was aware of the DOT and the nature of Livdahl's withdrawal of the funds at the time of the sheriff's sale in July 2016, if not sooner, and he was aware that this senior lien would be an issue when he purchased the Property.

Roberts also lacked standing to file the Second Complaint. To challenge the dischargeability of a debt resulting from fraud or misrepresentation under § 523(a)(2)(A), "**the creditor to whom such debt is owed**" must request exception of that debt from discharge. § 523(c)(1) (emphasis added). *See In re Fonnemann*, 128 B.R. 214, 219 (Bankr. N.D. Ill. 1991); *In re Linn*, 88 B.R. 365, 366 (Bankr. W.D. Okla. 1988) ("The meaning of § 523(c) and Rule 4007(a) is specific and inescapable:  Only the creditor holding the specific claim may file a complaint to except the debt from discharge."). Livdahl owes the $125,000 debt to Credit Union, not Roberts. Thus, Credit Union was the proper party in interest to bring the alleged claim Roberts is trying to assert. Although generally it would be error to dismiss a complaint simply because the wrong party filed it,[7] there was no error here because the Second Complaint was also untimely as to Credit

---

[7] A court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Civil Rule 17(a)(3); Rule 7017. *See FDIC v. Meyer (In re Meyer)*, 120 F.3d 66, 68-69 (7th Cir. 1997).

18

Union. Credit Union received notice of the bankruptcy and of the Rule 4007(c) bar date for dischargeability claims under § 523(c)(1). If Credit Union had a § 523(a)(2)(A) dischargeability claim against Livdahl, it had to file its complaint by February 13, 2017. Even if Roberts could exercise Credit Union's right to enforce the debt, any claim by Credit Union for nondischargeability would still be time barred.

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Because Roberts could not cure the standing deficiency, and the court had no authority to relieve him of his untimely filing, any amendment to the Second Complaint would have been futile. Thus, no leave to amend was required.

Accordingly, because the bankruptcy court lacked subject matter jurisdiction over the Second Complaint, and because amendment would have been futile, the court did not err in granting the Motion to Dismiss and dismissing the adversary proceeding with prejudice.

## VI. CONCLUSION

For the reasons stated above, we AFFIRM.[8]

---

[8] We DENY as unnecessary Livdahl's request for leave to file a motion for sanctions against Roberts under Rule 8020 for filing a frivolous appeal. While a separate motion is required under the rule, leave is not required. We also DENY her request for sanctions under 28 U.S.C. § 1927. Such sanctions are not available in this court. *See Perroton v. Gray (In re Perroton)*, 958 F.2d 889 (9th Cir. 1992) (28 U.S.C. § 1927 sanctions are not available to bankruptcy courts); *Determan v. Sandoval (In re Sandoval)*, 186 B.R. 490, 495-96 (9th Cir. BAP 1995) (extending *Perroton* to include the BAP).